PARIENTE, C.J.
We have for consideration the biennial report of proposed rule changes filed by The Florida Bar’s Juvenile Court Rules Committee (Rules Committee), in accordance with Florida Rule of Judicial Administration 2.130(c)(4). We have jurisdiction. See art. V, § 2(a), Fla. Const.
BACKGROUND
The Rules Committee proposes amendments to Florida Rules of Juvenile Procedure 8.165, Providing Counsel to Parties; 8.203, Application of Uniform Child Custody Jurisdiction Act; 8.240, Computation and Enlargement of Time; 8.245, Discovery; 8.255, General Provisions for Hearings; 8.290, Dependency Mediation; 8.300, Taking Into Custody; 8.305, Shelter Petition, Hearing, and Order; 8.315, Arraignments and Prehearing Conferences; 8.325, Answers and Pleadings; 8.400, Case Plans; 8.410, Approval of Case Plans; 8.415, Judicial Review of Dependency Cases; 8.500, Petition; 8.505, Process and Service; 8.510, Advisory Hearing and Pretrial Status Conferences; 8.515, Providing Counsel to Parties; 8.525, Adjudicatory Hearings; 8.535, Post-Disposition Hearings; and 8.603, Application of Uniform Child Custody Jurisdiction Act. Further, the Rules Committee proposes amendments to forms 8.908, Summons; 8.911, Uniform Child Custody Jurisdiction Act Affidavit; 8.959, Summons for Dependency Arraignment; 8.960, Shelter Petition; and 8.979, Summons for Advisory Hearing. Finally, the Rules Committee proposes new rule 8.257, General Magistrates, governing the use of general magistrates in dependency proceedings.[1] In accordance with Florida Rule of Judicial Administration 2.130(c)(2), the Rules Committee submitted its proposals to the Board of Governors of The Florida Bar and published the proposals for comment. The Board of Governors unanimously approved the proposed changes. After the proposals were filed with the Court, we published the proposals for comment. The Court received one comment in support of the Rules Committee’s proposal to amend rule 8.315, Arraignments and Prehearing Conferences.
ANALYSIS
After considering the proposed amendments and hearing oral argument, we adopt almost all of the Rules Committee’s amendments as proposed. However, as explained more fully below, we decline to adopt certain proposed amendments to rule 8.165, Providing Counsel to Parties, at *877 this time. Rather than describe each amendment, we focus on the more significant amendments and the amendments that we believe warrant explanation.
I. RULE 8.165 — PROVIDING COUNSEL TO PARTIES
Rule 8.165, Providing Counsel to Parties, is the procedural rule that effectuates the constitutional right that each juvenile has to counsel. The rule differs in certain material ways from the companion procedural rule governing counsel for adults.[2]
The Rules Committee proposes to amend rule 8.165 in three ways. First, it proposes that the rule require that a child be given a meaningful opportunity to confer with an attorney before waiving counsel in a delinquency proceeding. Second, it proposes that the rule require that the waiver always be in writing, as opposed to the current language of the rule that requires a juvenile’s waiver to be in writing only if the waiver is made at the time of a guilty or no contest plea or at the adjudicatory hearing. Third, the Rules Committee proposes a new rule subdivision, (b)(3), to require that when a child is entering a plea or being tried for a delinquent act, a written waiver of counsel be submitted to the court in the presence of a parent, a legal custodian, a responsible adult relative, or an attorney who has conferred with the child pursuant to subdivision (a) of the rule. Under this new subdivision, the aforementioned individual must also verify that he or she has discussed the decision to waive counsel with the child and that the child’s decision to waive counsel appears to be knowing and voluntary.
The proposed amendments to rule 8.165 are based upon the unanimous recommendation of The Florida Bar Commission on the Legal Needs of Children (the Commission). The Commission, which was an interdisciplinary statewide commission appointed by The Florida Bar, took testimony and considered how to improve the légal needs of children. The Commission’s stated mission was to recommend ways “to help children who appear in Florida’s' courtrooms in any capacity, whether as victims,' witnesses, defendants, or respondents.” Final Report of The Florida Bar Commission on the Legal Needs of Children, 3 (2002). In its report, the Commission noted that a “disturbing number”'of children waive their right to counsel in delinquency proceedings. See id.' at 5. The three amendments to rule 8.165 were the only suggested rule amendments among the Commission’s many recommendations.
A substantial majority of the Rules Committee voted to adopt the Commission’s proposed amendments to rule 8.165. In recommending that the Court adopt the proposed amendments, the Rules Committee noted “that the Commission was concerned with the large number of children who waive their right to an attorney, thus making the ‘right to an attorney’ in delinquency proceedings in Florida illusory.” The Rules Committee further' stated that the purpose of the amendments is to implement a juvenile’s constitutional right to counsel. The Rules Committee expressed *878 the belief that the proposal would reduce the reversals on appeal that occur because a trial court has failed to ensure that a juvenile’s waiver of counsel is knowing and voluntary.
It is important to note that the Steering Committee on Families and Children in the Court (the Steering Committee) voted to support the Rules Committee’s proposals as well. As one of its many tasks, the Steering Committee is charged with reviewing issues related to the availability of representation of children as reported by The Florida Bar Commission on the Legal Needs of Children and the Senate Interim Report on the Legal Needs of Children, and considering recommendations within the province of this Court. In addition to the Steering Committee’s support, the Florida Public Defender Association (FPDA) has also endorsed the amendments to rule 8.165. At oral argument, Ward Metzger, speaking on behalf of the FPDA, stated that the public defenders have agreed to consult with juveniles prior to any waiver of counsel. After oral argument, in a motion to provide additional information and comments, Metzger further stated that the public defenders do not construe the proposed amendment to rule 8.165(a) to require appointment within the meaning of chapter 27, Florida Statutes (2004). Although the public defenders stated that they do not anticipate a direct fiscal impact because in many circuits these procedures are already being followed, supplemental comments filed by the FPDA indicate that at least two circuits, the Sixth and the Twelfth, may experience a significant fiscal impact, including the need for additional employees, should rule 8.165 be amended as proposed.[3]
In considering the proposed amendments to rule 8.165, the Court considered the history of juvenile representation in delinquency proceedings in Florida. Prior to 1967, juvenile court was widely viewed as not requiring the procedural formalities generally afforded defendants in criminal and civil proceedings. See In re Gault, 387 U.S. 1, 15, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (“The apparent rigidities, technicalities, and harshness which [earlier courts] observed in both substantive and procedural criminal law were ... discarded [in juvenile proceedings].”). However, in 1967, recognizing the lack of procedural protections for children in these settings, the United States Supreme Court held that juveniles in delinquency proceedings have a right to counsel:
The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child requires the guiding hand of counsel at every step in the proceedings against him.
Id. at 36, 87 S.Ct. 1428 (footnote omitted) (emphasis added). In Florida, this right was subsequently codified in section 985.203(1), Florida Statutes (2004), which states that a child is entitled to representation by legal counsel at all stages of any delinquency proceeding.
Some of the procedural protections afforded juveniles during a delinquency proceeding, including a juvenile’s right to counsel, are largely premised on the notion that juveniles have only a limited understanding of the justice system. See State v. T.G., 800 So.2d 204, 211 (Fla.2001) (“[I]t is extremely doubtful that any child of *879 limited experience can possibly comprehend the importance of counsel”). In light of a juvenile’s potentially limited understanding of trial procedure, this Court has further noted that “the waiver of counsel inquiry is especially significant in juvenile cases because children may not fully comprehend the importance of counsel or the consequences of waiving the right to counsel.” Id. at 212. Therefore, “courts should be even more careful when accepting a waiver of counsel from juveniles.” Id. at 211.
Notwithstanding this Court’s previously noted concerns regarding a juvenile’s potentially unknowing and involuntary waiver of counsel, there are numerous recent examples of judges improperly accepting juveniles’ waivers of counsel, resulting in reversal on appeal. See, e.g., State v. B.P., 810 So.2d 918 (Fla.2002) (approving district court’s decision holding that even absent a motion to withdraw a plea, failure to advise a juvenile of right to counsel in accordance with rule 8.165 is reviewable and correctable on appeal and finding that the denial of counsel constituted fundamental error); F.K.H. v. State, 841 So.2d 645 (Fla. 2d DCA 2003) (reversing and remanding a determination of delinquency and placement of juvenile on probation where trial court failed to inquire into juvenile’s waiver of counsel at the plea hearing and failed to renew an offer of counsel at the disposition hearing); E.C.M. v. State, 835 So.2d 1280 (Fla. 2d DCA 2003) (finding that trial court committed reversible error when it failed to advise juvenile of right to counsel at restitution hearing even though the juvenile had previously waived counsel at arraignment); D.A. v. State, 831 So.2d 815 (Fla. 4th DCA 2002) (finding that trial judge failed to conduct a thorough and proper inquiry to determine juvenile’s comprehension of the offer of appointed counsel prior to accepting waiver of counsel); M.Q. v. State, 818 So.2d 615 (Fla. 5th DCA 2002) (finding that although judge made an offer of counsel at hearing, inquiry was insufficient to satisfy the rule as to what juvenile’s substantive rights were, as well as whether juvenile- knowingly waived them); S.A. v. State, 816 So.2d 1201 (Fla. 4th DCA 2002) (reversing commitment and remanding for new plea hearing where trial court failed to adequately inquire into juvenile’s waiver of right to counsel as required by Florida Rule of Juvenile Procedure 8.165(b)(2)); T.M. v. State, 811 So.2d 837 (Fla. 4th DCA 2002) (finding that trial judge fundamentally erred, in failing to conduct a proper inquiry regarding juvenile’s waiver of counsel prior to accepting plea); J.M.B. v. State, 800 So.2d 317, 319 (Fla. 2d DCA 2001) (recognizing “that the juvenile court judge must contend with an unusually heavy docket, and was dealing, in this case, with a juvenile who was no stranger to the ways of the juvenile justice system,” but finding that trial court erred in failing to renew the offer of counsel at each stage of the proceedings); V.S.J. v. State, 793 So.2d 104 (Fla. 2d DCA 2001) (finding that although court inquired about the voluntariness of juvenile’s plea, it did not conduct a thorough inquiry concerning the intelligence of juvenile’s waiver of counsel); G.E.F. v. State, 782 So.2d 951 (Fla. 2d DCA 2001) (finding that although trial court made an abbreviated inquiry regarding waiver of counsel, the inquiry failed to satisfy the requirements of rule 8.165). Considering the apparently low appeal rate of juvenile adjudications and dispositions, these examples may reveal only a small fraction of a potentially significant trend in delinquency proceedings as documented by the Commission.[4] Additionally, *880 a recent assessment of Florida’s juvenile delinquency courts has produced evidence suggesting that juveniles may be unaware of both their various rights in the courts and the judge’s role in informing a juvenile about his or her right to counsel.[5] The general presumption of a juvenile’s limited understanding of court proceedings has even led public defenders in some counties to adopt an informal agreement with trial courts in their jurisdictions by which the public defenders consult with juvenile defendants to ensure that each juvenile’s waiver is knowing and voluntary.[6]
Although we believe that consultation with an attorney prior to waiving counsel is an important additional safeguard designed to protect a juvenile’s constitutional right to counsel, we are also mindful of the potential financial impact of this requirement. We note that one of the recommendations of the representation subcommittee that was adopted by the full Commission on the Legal Needs of Children was to encourage efforts seeking legislative changes that would “create” a right to a prewaiver consultation and authorize the public defender to provide the required consultation. In fact, in its June 2002 Final Report, the Commission specifically recommended:
5. Florida law should specifically create a right for children to consult counsel, short of outright appointment for the duration of the case, in the following instances:
a. Regarding waiver of counsel or other right or legal interest in a delinquency proceeding, prior to the appointment of the Public Defender by a judge, or at any time thereafter where waiver is sought;
[[Image here]]
6. Florida law should specifically authorize the Public Defender to provide the consultation services outlined in # 5 above. This recommendation would necessitate the legislature appropriating additional funds for the Public Defender to adequately provide consultation services.
These two recommended changes in the law could be made by amending sections 985.208(1) and 27.51, Florida Statutes (2004).
Because of the potential financial impact of the amendment to rule 8.165(a) regarding consultation with attorneys and our *881 desire to work cooperatively with the Legislature, we urge the Legislature to consider the Commission’s recommendations. We also strongly urge that the voluntary practice that exists in many jurisdictions in which consultation with an attorney takes place be continued and, where possible, expanded in the interim.
We thus decline to adopt at this time the portion of rule 8.165(a) regarding consultation with an attorney prior to a waiver. We emphasize that we are not rejecting this proposed amendment to rule 8.165(a), but are merely deferring its consideration. We intend to readdress the adoption of the amendment to rule 8.165(a) at a future time following the conclusion of the legislative session. We further take this opportunity to reinforce that it is critical for delinquency judges to ensure that any waiver of counsel by a child is knowingly and voluntarily given, especially prior to accepting a plea of guilty or nolo contendere.
However, we unanimously adopt the amendment to rule 8.165(a) requiring a written waiver, and new rule 8.165(b)(3), which requires that when a child is entering a plea or being tried for a delinquent act, a written waiver of counsel be submitted to the court in the presence of a parent, legal custodian, responsible adult relative, or attorney assigned by the court to assist the child. As noted earlier, under this new subdivision, the aforementioned individual must also verify that the child’s decision to waive counsel has been discussed and appears to be knowing and voluntary.
We hope, as does the Rules Committee and the Commission on the Legal Needs of Children, that these additional procedural safeguards will enhance a juvenile’s ability to make a knowing and voluntary waiver of counsel, thereby preserving and protecting that juvenile’s constitutional rights. We also hope that the Legislature will consider our request on the issue of consultation with an attorney before waiver in juvenile delinquency proceedings.
II. RULE 8.257 — GENERAL MAGISTRATES
New rule 8.257, General Magistrates, is created to govern the use of general magistrates in juvenile dependency proceedings. In the last regular-cycle amendment proceedings, the role of general and special masters (now renamed general and special magistrates) in juvenile proceedings was at issue. See Amendments to Florida Rules of Juvenile Procedure, 827 So.2d 219, 220 (Fla.2002) (“Amendments ”). In Amendments, the Rules Committee proposed an amendment to rule 8.255, General Provisions for Hearings, that would prohibit general and special masters from conducting specific dependency hearings — namely, shelter hearings, contested dependency adjudicatory hearings, disposition hearings, and contested termination of parental rights adjudicatory hearings. The Court determined that in light of the Revision 7/Arti-cle V funding issues that were being considered by the Court,[7] it should not limit the role of general masters, except to prohibit masters from hearing certain *882 proceedings that are required by law to be heard by a judge, until the Court could consider the impact that those funding issues would have on the administration of juvenile justice:
As we have stated, Florida’s children are our greatest resource, and adequate funding of juvenile judicial proceedings is of paramount importance:
Florida’s oft-repeated pledge that “our children come first” cannot ring hollow in — of all places — our halls of justice. Judges, prosecutors, public defenders and others serving in the juvenile system cannot hope to make a difference in the life of a single troubled child if they must contend with staggering caseloads made worse by the maldistribution of judicial resources.
See Amendment to Florida Rule of Juvenile Procedure 8.100(a), 753 So.2d 541, 545 (Fla.1999). We hesitate to take actions that could have a significant impact on the Florida judicial system’s ability to provide timely and efficient adjudication of juvenile dependency proceedings without considering the “big picture” of how funding for our judicial system will be allocated under the Revision 7 implementation. Therefore, we decline to limit the role of masters in juvenile proceedings by a rule of procedure until this Court has had time to consider the impact — practically and financially — that Revision 7 will have on the administration of juvenile justice.
Amendments, 827 So.2d at 221.
In Amendments, the Court further noted that “there is no formal procedure in place for obtaining the parties’ consent to refer a dependency or termination of parental rights matter to a master.” Id. at 222. For this reason, the Court made the following referral to the Juvenile Court Rules Committee:
[Bjecause we believe that a formal procedure for obtaining the parties’ consent to referral to a master in dependency and termination of parental rights proceedings is necessary, and because other rules of court currently have such a procedure in place, see, e.g., Fla. Fam. L.R.P. 12.490(b), we refer this matter back to the Committee for consideration of a rule of juvenile procedure for obtaining the parties’ consent.
Id. at 222.
The Rules Committee patterned new rule 8.257 after Florida Family Law Rule of Procedure 12.490, General Magistrates. Subdivision (a) addresses the appointment of magistrates. Subdivision (b) addresses consenting to a magistrate, objecting to a magistrate, and the contents of the order of referral. Subdivision (c) addresses the general powers and duties of a general magistrate. Subdivision (d) addresses the proceeding of a hearing before a general magistrate, including whether electronic reporting or a court reporter is being provided by the court. Subdivision (e) addresses the content and service of the magistrate’s report. Subdivision (f) addresses the service of exceptions to the magistrate’s report. Finally, subdivision (g) addresses the provision of the record to the court for a hearing on exceptions.
The Steering Committee expressed concern regarding new rule 8.257 because it felt that there were a number of outstanding issues related to the use of general magistrates in family court generally that it is still studying. One such issue is how to resolve policy considerations involved in the referral of final proceedings to general magistrates, such as adjudicatory hearings (which, as noted earlier, was at issue in Amendments).
While we recognize that the Steering Committee may have ongoing concerns *883 with the use of general magistrates in certain proceedings, we feel that these concerns should not preclude adoption of this rule because it sets forth integral procedures of appointing ,a magistrate, consenting to a magistrate, and conducting the hearing before a magistrate. Accordingly, although the role of magistrates in juvenile proceedings may need to be reviewed and possibly amended in the future, we adopt rule 8.257 as proposed at this time.[8]
III. CASE PLANS
Rule 8.400, Case Plans, is amended to add new subdivisions (b)(2) and (b)(3) to clarify the procedure for amending case plans. In M.W. v. Davis, 756 So.2d 90, 107 (Fla.2000), this Court noted the lack of guidance regarding the type of evidence required to amend a case plan. The amendment to rule 8.400 provides that any amendments must be based on competent evidence, and if any party objects to the amendment of a case plan, the court must conduct a hearing allowing each party to present evidence and information as permitted by rule 8.340(a), Disposition Hearings; Information Available to Court.
Subdivision (b)(4) of rule 8.410, Approval of Case Plans, is amended to clarify what findings a court must make in approving a case plan with a goal of reunification with the parents. We further amend subdivision (c), Amendment of Plan, to refer to “goals for permanency” as opposed to reunification of the child with the parents.
IV. RULE AMENDMENTS NECESSARY TO BRING THE RULES INTO CONFORMANCE WITH THE FLORIDA STATUTES .
Rule 8.240, Computation and Enlargement of Time, is amended to add new subdivision (d), Continuances and Extensions of Time, to create a procedure for filing a motion for continuance, extension, or waiver of time in dependency and termination of parental rights proceedings. This amendment conforms the rule to section 39.013(10), Florida Statutes (2004).
Rule 8.290, Dependency Mediation, is amended to delete the language “unless waived by all parties and approved by the court,” from subdivision (c), Compliance with Statutory Time Requirements, which currently provides that “Dependency mediation shall be conducted in compliance with the statutory time requirements for dependency matters unless waived by all parties and approved by the court.” This amendment requires dependency media-tions to comply with statutory time requirements.
Subdivision (f)(6) of rule 8.415, Judicial Review of Dependency Cases, is amended to remove a provision that allows commitment of a child to a licensed child-placing agency for adoption. This amendment conforms the rule to section 39.812(1), Florida Statutes (2004).
We amend subdivision (a)(2) of rule 8.500, Petition, to delete “a licensed child-placing agency” from the list of those who may file a petition to terminate parental rights, thereby conforming the rule to section 39.802(1), Florida Statutes (2004), which was amended in 2001 to remove “licensed child-placing agency” from the list. See ch.2001-03, § 2, at 7, Laws of Fla.
Subdivision (a)(5) of rule 8.505, Process and Service, is amended to require notice to grandparents of termination of parental rights pending adoption proceedings as provided by law. The amendment conforms the rule to section 63.0425(1), Florida Statutes (2004). We further amend subdivision (c), Constructive Service, of *884 rule 8.505 to clarify that service is only required for parties whose identities are known, in conformance with section 39.803(1) and (4), Florida Statutes (2004). We further amend subdivision (d), Waiver of Service, of rule 8.505 to remove the reference to commitment of a child to a licensed child placing agency. This amendment conforms the rule to sections 39.811(2) and 39.812(1), Florida Statutes (2004).
We amend subdivision (a)(3) of rule 8.510, Advisory Hearing and Pretrial Status Conferences, to specify that the court shall enter a consent to the termination of parental rights petition for the parent who failed to personally appear at the advisory hearing on the termination of parental rights petition. The amendment brings the rule into conformance with section 39.801(3)(a) and (3)(d), Florida Statutes (2004). We also amend subdivision (a)(4) of rule 8.510 to clarify the procedure for entry of admissions or consents to termination of parental rights.
Subdivision (a)(1) of rule 8.515, Providing Counsel to Parties, is amended to delete the requirement to offer counsel if the parties have executed voluntary surrenders to terminate their parental rights. This amendment conforms the rule to section 39.013(9), Florida Statutes (2004).
Subdivision (c), Continuing Jurisdiction, of rule 8.535, Post-Disposition Hearings, is amended to add a sentence stating that the petition for adoption must be filed in the court that entered the judgment terminating parental rights unless a motion for a change of venue is granted. The amendment conforms the rule to section 39.812(5), Florida Statutes (2004).
y. MISCELLANEOUS RULE CHANGES RE: JUVENILE DEPENDENCY
Subdivision (g)(2)(B) of rule 8.245, Discovery, is amended to allow the clerk, court, or any attorney of record to issue subpoenas for taking depositions. This amendment conforms the rule to Florida Rule of Juvenile Procedure 8.225(a)(2) and Florida Rule of Civil Procedure 1.410(a).
Subdivision (b)(9) of rule 8.305, Shelter Petition, Hearing, and Order, is amended to clarify that if a shelter hearing is conducted by a judge other than one assigned to hear dependency cases, a judge assigned to hear dependency cases must review the child’s status within two working days. As currently written, the rule refers to the “juvenile court judge,” and this language could include a judge that hears delinquency cases. In addition, we amend subdivision (c), Shelter Order, of rule 8.305 to clarify that findings need to be made only in an order granting shelter care, pursuant to section 39.402(8)(h), Florida Statutes (2004).
In rule 8.315, Arraignments and Pre-hearing Conferences, the second sentence of subdivision (a) is amended to read “If an admission or consent is entered and no denial is entered by any other parent or legal custodian, the court shall schedule a disposition hearing to be conducted within 15 days.” If any parent or legal custodian denies the allegations of the dependency petition, it is a denial of due process to move to disposition without an adjudicatory hearing. See Monteiro v. State, 477 So.2d 45, 45-46 (Fla. 3d DCA 1985) (finding that where one of the parents denied the allegations in the dependency petition, the trial court’s action in adjudicating the child dependent without an adjudicatory hearing violated the non-consenting mother’s due process rights under the United States and Florida Constitutions).
We further amend subdivision (a) of rule 8.315 by striking the language stating that *885 the court may grant a continuance as provided by law when a denial of the allegations of a dependency petition is entered at the arraignment. In proposing the aforementioned amendment, the committee clarified that this change is intended to eliminate language regarding continuances throughout the rules in favor of having all language regarding continuances contained in rule 8.240, Computation and Enlargement of Time.
Rule 8.325, Answers and Pleadings, is amended to delete subdivision (d), Stipulations, which addresses stipulations to the placement of a dependent child. ■ In amending this rule, it is not our intent to prohibit parties from entering into any type of stipulation, just stipulations to the placement of a dependent child.
Finally, we amend forms 8.908, Summons, 8.959, Summons for Dependency Arraignment, 8.960, Shelter Petition, and 8.979, Summons for Advisory Hearing, to add language regarding the provision of assistance to persons with disabilities.
Accordingly, we amend the Florida Rules of Juvenile Procedure as reflected in the appendix to this opinion. New language is indicated by underscoring; deletions are indicated by struck-through type. Committee notes are included for explanation and guidance only and are not adopted as an official part of the rules. The amendments shall become effective immediately.
It is so ordered.
WELLS, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion.
LEWIS, J., concurs in part and dissents in part with an opinion, in which ANSTEAD, J., concurs.

. The Rules Committee initially proposed new rule 8.257, General Masters. However, the 2004 Legislature passed chapter 2004-11, Laws of Florida, which redesignates ‘'masters” and "general or special masters” as "general or special magistrates.” This act took effect on October 1, 2004. See ch. 2004-11, § 104, Laws of Fla. Because the amend-merits proposed by the Rules Committee will become effective after this date, the Rules Committee sought to amend its petition to substitute "magistrate” for "master” in proposed rule 8.257. On April 29, 2004, the Court granted the Rules Committee's motion to amend its petition.

. Florida of Rule of Criminal. Procedure 3.111(d)(3) provides that “[rjegardless of the defendant's legal skills or the complexity of the case, the court shall not deny a defendant's unequivocal request to represept himself or herself, if the court makes a determination of record that the defendant has made a knowing and intelligent waiver of the right to counsel.” In contrast, Florida Rule of Juvenile Procedure 8.165(b)(3) precludes the acceptance of a waiver of counsel "where it appears that the party is unable to make an intelligent and understanding choice because of mental condition, age, education, experience, the nature or complexity of the case, or other factors.”

. This impact could be related to the fact that in the Sixth and the Twelfth Circuits, the current percentages of unrepresented children are quite high — 50% and 75%, respectively.

. See, e.g., Mary Berkheiser, The Fiction of Juvenile Right to Counsel: Waiver in the Juve *880 nile Courts, 54 Fla. L.Rev. 577, 633 (2002) (discussing a 1996 study of the ABA Juvenile Justice Center finding that the practice of taking appeals in juvenile proceedings was "lacking in most jurisdictions," as well as noting that "[njearly one-half of juvenile public defenders and more than three quarters of appointed lawyers authorized to file appeals reported that they had taken no appeals in the preceding year").

. In April 2003, the Office of Court Improvement, which is part of the Office of the State Courts Administrator, pursuant to a directive by the Chief Justice of the Florida Supreme Court, studied and published an assessment on the juvenile court process that discussed in part juveniles’ ability to understand court proceedings. See Office of the State Courts Administrator, Florida’s Juvenile Delinquency Court Assessment (2003). Part of the study utilized interviews with a small sample of juveniles. Id. at 37. Many of the juveniles interviewed, including those who stated they were aware of the reason why they were in court, exhibited limited knowledge of the courtroom participants. Id. at 38. Moreover, none of the juveniles interviewed expected the judge to discuss their various rights to counsel and a trial. Id.

. At oral argument, Ward Metzger, a practicing assistant public defender in the Fourth Circuit, noted that the courts in his jurisdiction have adopted such an informal arrangement. Similarly, Circuit Court Judge Lynn Tepper, appearing at oral argument on behalf of the Steering Committee, stated that she maintains such a procedure in her courtroom.

. As explained by the Court in Amendments:
On November 3, 1998, the voters of the State of Florida passed Revision 7 which amended article V of the Florida Constitution. Revision 7 made significant changes in the way the Florida courts are to be funded under article V, section 14 of the Florida Constitution. The revision clarifies which portions of the judicial system will be the funding responsibility of the State, and which will be the funding responsibility of the counties. The Legislature intends for the amendment to article V, section 14 to be effectuated on or before July 1, 2004. See § 29.003(5), Fla. Stat. (2001).
827 So.2d at 221 n. 1.

. In light of our adoption of new rule 8.257, we delete rule 8.255(i), Masters.